JUSTIN RUSK, OSB No. 175946
E-mail: justinr@hoffmanlawpnw.com
Hoffman Law LLC
1000 SW Broadway, Ste. 1500
Portland, OR 97205
Telephone: (503) 222 -1125

*CJA Counsel for Defendant Noah Madrano*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES,<br><br>            Plaintiff,<br><br>     v.<br><br>NOAH MADRANO,<br>              Defendant. | Case No. 3:22-cr-00328-MO<br><br>**DEFENDANT NOAH MADRANO'S<br>SENTENCING MEMORANDUM** |

Defendant Noah Madrano ("Mr. Madrano"), by and through his undersigned counsel, respectfully submits this Sentencing Memorandum for consideration by the Court for his upcoming sentencing hearing scheduled for April 8, 2025.

Mr. Madrano provides this Sentencing Memorandum, along with the additional separately submitted confidential materials, to address and outline important information for the Court's consideration of the enumerated sentencing factors pursuant to 18 U.S.C. § 3553(a). The submitted information, along with the forthcoming arguments of counsel at sentencing, will show that a sentence of 292 months, along with lifetime supervision and sex offender registration, is sufficient, but not greater than necessary to achieve the sentencing goals of deterrence, just punishment,

rehabilitation, unwarranted sentencing disparities between defendants, and the unique history and characteristics of Mr. Madrano within the context of the nature and circumstances of his offense.

In contrast, the Government and Probation Office's recommended Life sentence would be a greater sentence than necessary to sufficiently achieve these objectives. A sentence of life imprisonment in this matter, after considering all of the relevant factual information and balancing the goals of sentencing, would be unnecessarily punitive and disproportionate not only to the context within which Mr. Madrano's offense occurred, but also to other defendants who engaged in more egregious and culpable conduct and received sentences more comparable to the 292-month sentence sought by Mr. Madrano.

## I.    INTRODUCTION

Mr. Madrano appears before the Court for sentencing pursuant to his January 13, 2025 guilty plea to one count of Sexual Exploitation of a Child in violation of Title 18, United States Code, Section 2251(c) (Count 2), and one count of Transportation of a Minor with Intent to Engage in Criminal Sexual Activity in violation of Title 18, United States Code, Section 2423(a).

As addressed in more detail in Mr. Madrano's confidential supplemental materials and briefly addressed below, a 292-month sentence of incarceration along with lifetime supervision and sex offender registration is an appropriate sentence that provides just punishment to Mr. Madrano for his offenses within the unique context in which they occurred, promotes respect for law, reflects the seriousness of his offenses, provided adequate deterrence to future criminal conduct, and protects society from future offenses. Further, a 292-month sentence, especially when compared to the Government's recommended life sentence, provides Mr. Madrano a necessary incentive for rehabilitation and engagement in corrective treatment and programming, providing

him a "light at the end of the tunnel" to strive for as he continues on the path of reflection, remorse, and reformation.

## II.    Legal Standard

In determining the appropriate sentence for a criminal defendant in any action, it is the "sentencing judge's overarching duty under § 3553(a) to 'impose a sentence sufficient, *but not greater than necessary*' to comply with the sentencing purposes set forth in § 3553(a)(2)" and achieve society's goals of rehabilitation, deterrence, and retribution. *Pepper v. United States*, 562 U.S. 476, 491 (2011) (emphasis added).  To arrive at a sufficient sentence, district courts are directed to consider (1) the nature and circumstances of the offense including the unique history and characteristics of the defendant; (2) the need for the sentence imposed to provide just punishment, deterrence, and needed educational and vocational training; (3) the kinds of sentences available; (4) the sentencing range established by the United States Sentencing Guidelines along with pertinent policy making statements issued by the Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among similarly situated defendants; and (6) the need to provide restitution. *See* 18 U.S.C. § 3553(a).

As recognized by the Ninth Circuit, sentencing is "an art … to be performed … as a sensitive response to a particular person who has a particular personal history and has committed a particular crime." *United States v. Harris*, 679 F.3d 1179, 1183 (9th Cir. 2012).  For every case, the sentencing court "must make an individual assessment based on the facts presented" to ensure that the sentence imposed is not greater than necessary for each individual defendant. *Gall v. United States*, 552 U.S. 38, 50 (2007).

### III.    The Sentencing Guidelines

The preliminary step in any sentencing is for the Court to properly calculate the recommended sentencing range proposed in the Guidelines.  *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc); *see also Gall*, 552 U.S. at 49 ("a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."). This calculation is to be done as "a matter of administration" to secure a nationwide "starting point" and "initial benchmark." *Gall*, 552 U.S. at 49.

However, although the Court is required to calculate the Guideline range as a starting point for evaluating an appropriate sentence, it is "emphatically clear" that the Guidelines are simply "advisory." *See e.g.*, *United States v. Cavera,* 550 F.3d 180, 189 (2d Cir. 2008).  The Guideline range cannot be presumed reasonable in any particular case.  *Rita v. United States*, 551 U.S. 338, 351 (2007) ("the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply").  Moreover, the Ninth Circuit has specifically held that the Guidelines are not to be given "more or less weight than any other" of the § 3553 factors. *United States v. Carty*, 520 F.3d 984, 991 (9ᵗʰ Cir. 2008).  Rather, the Court must conduct its own independent review of the sentencing factors enumerated in Section 3553(a) and a Court may vary from the Guidelines range based on the other sentencing factors and for "policy considerations, including disagreements with the Guidelines." *Kimbrough v. United States*, 552 U.S. 85, 101 (2007); *see also, Gall*, 552 U.S. at 49-51; *United States v. Booker*, 543 U.S. 220, 245 (2005).

Here, a Presentence Report ("PSR") was completed in this matter and submitted to the Court for consideration. The PSR specifically notes that Mr. Madrano has no prior criminal history, and his criminal history category is a I. The PSR also properly calculates Mr. Madrano's offense level at 42 based on the enhancements identified in pages 11 and 12, along with a three-level

reduction for acceptance of responsibility. Based on a final offense level of 42, the sentencing guideline range as calculated in the PRS is 360-months to life incarceration.

### IV.    A Variance from the Guidelines is Warranted in this Matter under Section 3353

Mr. Madrano does not challenge the total offense level or the guideline calculation in this matter. However, Mr. Madrano notes that the final offense level is the result of the application of several, non-ubiquitous and effectively duplicative sentencing enhancements for offenses involving the visual depiction of minors engaged in sexual activity. Although those sentencing enhancements are factually supported by the underlying factual record of Mr. Madrano's plea and the information in the PSR, there are compelling and well-founded public policy reasons for the Court to vary from the advisory guideline range calculated by the inclusion of these enhancements and consistent with Ninth Circuit jurisprudence by two levels as part of its consideration of the Section 3353 factors. *See United States v. Henderson*, 649 F.3d 955, 965 (9th Cir. 2011) (holding that District Courts may vary from the Child Pornography Guidelines on the basis of policy disagreements with guideline enhancement factors). Under such a variance, the adjusted offense level would a 40, and the adjusted sentencing guideline range for Mr. Madrano's offenses would be 292 months to 365 months' incarceration.

#### A. Legal Authority for a Variance

Although the sentencing guidelines are advisory, the guideline calculation with respect to crimes involving visual depictions of minors are not reasonable as they are not based on empirical data and, as recognized by the Sentencing Commission and the Ninth Circuit, due to technological changes far outpacing congressional legislation and sentencing reforms the sentencing enhancements have become ubiquitous in nearly every case coming before the federal courts

thereby making differentiating defendants based on the guidelines meaningless. In fashioning a sufficient, but not greater than necessary sentence for Mr. Madrano in this particular matter, this Court should recognize the failure of the guidelines to meet the goals and objectives of sentencing enumerated in Section 3553(a) and vary from the guidelines by two levels for policy reasons.

The Ninth Circuit has specifically held that District Courts may vary from the child pornography guidelines on the basis of policy disagreements with the application of the associated enhancements. *United States v. Henderson*, 649 F.3d 955, 965 (9th Cir. 2011). In *Henderson*, the appellate court reviewed the history of the child pornography guidelines and concluded that "as the history and the Commission's own reports and assessments of these Guidelines demonstrate … the Guidelines are, to a large extent, not … base[d] … on empirical data and national experience." *Id* at 693. Instead, the appellate court found that these Guidelines are the result of "frequent mandatory minimum legislation and specific congressional directives to the Commission to amend the Guidelines." *Id.* Ultimately, the Ninth Circuit reversed the defendant's sentence because it was unclear from the sentence whether the District Court appreciated its ability and discretion to vary from the child pornography guidelines following the Supreme Court's decision in *Kimbrough v. U.S.*, 552 U.S. 85 (2007). *Id.* As such, this Court may properly find that the child pornography guidelines were not developed by the Commission in its characteristic institutional role of basing its determinations on empirical data and national experience and take such considerations into account by varying downward in this matter to account for the technical inclusion of certain sentencing enhancements. *Henderson*, 649 F.3d at 959-60 ("[T]he child pornography Guidelines were not developed in a manner 'exemplify[ing] the [Sentencing] Commission's exercise of its characteristic institutional role,' . . . so district judges must enjoy the same liberty to depart from them based on reasonable policy disagreement as they do from the

crack-cocaine Guidelines discussed in *Kimbrough*.").

Across the county the child pornography guidelines, by enhancing sentences based upon factors that are inherent in the crime and thus appear in nearly every case, concentrates offenders at or near the statutory and guideline maximum for an offense and thus fails to meaningfully distinguish more serious offenders from less serious offenders. As the Sixth Circuit has observed, sentences at or near the statutory maximum should be reserved for the "worst possible variation of the crime" committed by the most dangerous offender. *See United States v. Aleo*, 681 F.3d 290, 302 (6th Cir. 2012); *cf. United States v. Poynter*, 495 F.3d 349, 354 (6th Cir. 2007) ("not all repeat sex offenders deserve" to be sentenced at the statutory maximum; "otherwise, Congress would not have set a statutory range of 0-60 years"). Moreover, because the Sentencing Commission has not corrected the problem of multiple overlapping enhancements, district courts have recognized that a variance is warranted to avoid an unreasonable, enhance sentence. *See e.g., United States v. Parris,* 574 F. Supp. 2d 744, 745 (E.D.N.Y. 2008) (noting that the guidelines in security fraud cases "are patently absurd on their face" due to the "piling on of points" under § 2B1.1). This is especially true where the enhancements have a "disproportionate effect on the sentence relative to the offense." *United States v. Gonzalez*, 492 F.3d 1031, 1039 (9th Cir. 2007).

**B. Basis for a Variance**

A two-level variance below the PSR calculated guidelines in this matter is necessary to address systemic issues prevalent in cases involving the visual depiction of children guidelines as sentencing enhancements that apply in nearly every case do not serve their purpose. The are several sentencing enhancements for sexual exploitation of a child offenses that apply in nearly every case sentenced under § 2G2.1, particularly in relation to the use of a computer and distribution enhancements. In total, over 90% of defendants sentenced under § 2G2.1 receive 4-to-6 point

enhancements just from this section of the sentencing guidelines with little to no difference between defendant culpability, conduct, or other offense characteristics. *See* U.S. Sent'g Comm'n, *Use of Guidelines and Specific Offense Characteristics* (2011). As these enhancements effectively now describe conduct that is essentially ubiquitous to the commission of the underlying offense itself, such that it is much harder to commit the offense absent these enhancements, the use of these enhancements in federal sentencing no longer define or differentiate a more culpable offender or a defendant that poses a higher risk of harm.

The Sentencing Commission confirms that "sentencing enhancements that originally were intended to provide additional proportional punishment for aggravating conduct now routinely apply to the vast majority of offenders," so that the "current guideline does not adequately distinguish among offenders regarding their culpability for their collecting behaviors," U.S. Sent'g Comm'n, *Report to the Congress: Federal Child Pornography Offenses* (2012). Because the enhancements for computer use and distribution "now apply to most offenders," the guideline "fail[s] to differentiate among offenders in terms of their culpability." *Id*. Further, the Commission explained that because "sentencing enhancements that originally were intended to provide additional proportional punishment for aggravating conduct now routinely apply to the vast majority of offenders,", the "current guideline does not adequately distinguish among offenders regarding their culpability" for their specific behavior. Put simply, current Section 2G2.1 does not adequately account for relevant mitigating or aggravating factors for sentencing a particular defendant. As such this Court can, and should, take into account the issues inherent within the current guideline scheme into account in ultimately fashioning a sentence in this matter and account for those issues with a 2-level variance of the PSR calculated offense level.

///

### V.     The Goals and Objectives of Sentencing Are Best Met by a 292-month Sentence

As noted above, the overarching duty of the Court is to impose a sentence *sufficient, but not greater than necessary* to achieve society's goals of rehabilitation, deterrence, and retribution. *Pepper*, 562 U.S. at 491. It is undisputed that Mr. Madrano committed serious offenses; offenses for which society has established high mandatory minimum sentences of 10 and 15 years, respectively, and for which there are higher statutory maximum sentences. However, a Life sentence for Mr. Madrano, a first-time offender who was dealing with personal and mental struggles coming out of the extreme isolation of the pandemic and who has no prior sexually aggressive or violent tendencies, is a substantially unwarranted sentence. Such a sentence is particularly disparate for a defendant who engaged in the offenses under a misguided and fantastical belief that he was having a real relationship with the minor victim and that she was reciprocating and inviting his pursuit of the relationship. His conduct, when viewed collectively and within the context of the issues he was going through at the time, establish that an incarceratory sentence that provides an opportunity for reintegration into society is an appropriately sufficient sentence.

Here, and as addressed in more detail in Mr. Madrano's confidential supplemental materials, the fundamental principles and goals of sentencing under § 3553(a) call for a sentence of 292 months' incarceration. Such a sentence appropriately reflects the nature and circumstances surrounding Mr. Madrano's offense and his own unique history and characteristics; addresses the need to impose a just punishment while providing Mr. Madrano with necessary treatment and programming; provides adequate deterrence both to Mr. Madrano and to the general public; avoids unwarranted sentencing disparities; and reflects the underlying, but not yet corrected, legislative and policy issues surrounding the sexual exploitation of children sentencing enhancements.

Considering all relevant sentencing factors, there is no basis to conclude that a Life sentence as recommended by the Government in this matter would further achieve or advance any of the goals of sentencing beyond which a 292-month sentence would achieve, and would instead be an unnecessarily punitive sentence. Accordingly, a 292-month sentence of incarceration is an appropriate and reasonable sentence in this matter.

## VI.    CONCLUSION

Based on all of the information that the Court shall have at the time of sentencing,  a sentence of 292 months, along with lifetime supervision and sex offender registration, is sufficient, but not greater than necessary to achieve the sentencing objectives of 18 U.S.C. § 3553(a).

Respectfully submitted this April 1, 2025.


*/s/ Justin Rusk*
JUSTIN RUSK, OSB No. 175946
Hoffman Law LLC
1000 SW Broadway, Ste. 1500
Portland, OR 97205
Phone: (503) 222-1125
justinr@hoffmanlawpnw.com

CJA Counsel for Defendant Noah Madrano